UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELTON ROSEBORO | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No. 06-0602 (TFH) |
| JAMES H. BILLINGTON, | ) |
| LIBRARIAN OF CONGRESS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendant James Billington, Librarian, Library of Congress, hereby moves for summary judgment. The grounds for Defendant's cross-motion for summary judgment and opposition are established in the accompanying Memorandum of Points and Authorities and Supporting Statement of Material Facts to Which There is No Genuine Dispute.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Civil Division

555 4th Street, N.W.
Washington, D.C. 20530
202-305-1334

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELTON ROSEBORO )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JAMES H. BILLINGTON, )<br>LIBRARIAN OF CONGRESS, )<br>)<br>Defendant. )<br>) | Civil Action No. 06-0602 (TFH) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rule 7(h), Defendant hereby submits the following Statement of Material Facts as to which there is no Genuine Dispute.

1. Plaintiff, Mr. Shelton Roseboro, was employed at the Library of Congress ("the Library") between 1989 and 2004. Plaintiff's Statement of Material Facts to Which There is No Genuine Dispute ("PMF") ¶ 2; Declaration of Shelton Roseboro ("Roseboro Decl.") ¶ 1.[1]

2. Plaintiff was employed at the Library in excess of 1250 hours for the year preceding February 2004. PMF ¶ 3; Roseboro Decl. ¶ 1.

3. Plaintiff suffered a near drug overdose on February 3, 2004. On February 4, 2004, Roseboro did not attend work and instead checked himself into Gospel Rescue Ministries to undergo a twelve month rehabilitation program. PMF ¶ 5; Roseboro Decl. ¶ 4; Plaintiff's Exhibit ("P.Ex.") B:1.

---

[1] Plaintiff cites to the Declaration of Shelton Roseboro as "Exhibit A."

4. On February 11, 2004, Carlton White, the Assistant Program Director of Gospel Rescue Ministries, notified the Library that Roseboro was a resident at the "Transforming Lives Ministry" program and would continue to reside at Gospel Rescue Ministries for 12 months. PMF ¶ 8; P.Ex B:2.

5. On February 17, 2004, Dr. Jeff Lowenkron, Plaintiff's doctor notified the Library that due to a history of artery disease and crack-cocaine abuse, Plaintiff was "planning on entering a one-year program to regain control of his life" because it was "important that he focus on his drug addiction to be able to return to work in one year drug-free." PMF ¶ 9; P.Ex. B:3.

6. On February 18, 2004, Library Health Services Officer Alrene Klauber acknowledged that Plaintiff had been under medical care since February 6, 2004 and requested 12 months of medical leave to continue his care. PMF ¶ 10; P.Ex. B:4.

7. On March 15, 2004, Carlton White, the Assistant Program Director of Gospel Rescue Ministries, again notified the Library that Plaintiff was a resident at the "Transforming Lives Ministry" program and would continue to reside at Gospel Rescue Ministries for 12 months. PMF ¶ 11; P.Ex. B:5.

8. On March 22, 2004, Plaintiff submitted a Request for Sick Leave to the Library for approximately nine total months of FMLA leave starting on February 3, 2004 and ending on November 8, 2004. PMF ¶ 13; P.Ex. B:10.

9. Among the documentation Plaintiff signed and submitted to the Library in February 2004, was an FMLA Leave Request Approval/Disapproval Form that stated "Except as explained below, you have a right under the Family and Medical Leave Act (FMLA) for up to 12 weeks of unpaid leave … in a 12 month period…." Plaintiff's Motion for Summary Judgment at 10; P.Ex. B:11.

10. The FMLA Leave Request Approval/Disapproval Form, Plaintiff's Exhibit B:11, repeatedly refers FMLA leave applicants to Library of Congress Regulations LCR 2015-21, which Plaintiff attaches as Plaintiff's Exhibit C. Section 3 H of LCR 2015-21 describes that "Family and Medical Leave means an employee's entitlement to 12 administrative work weeks of unpaid leave." P.Ex. C:2. Section 5 of LCR 2015-21 – "FMLA Entitlements" – describes that "[a]n eligible employee shall be entitled to a total of 12 administrative work weeks of unpaid leave (leave without pay) during any 12-month period." P.Ex. C:4.

11. On March 31, 2004, Library Human Resources Director Teresa Smith decided to deny Plaintiff's leave request because he failed to meet the FMLA's eligibility requirements. PMF ¶ 15; P.Ex. B:10. Ms. Smith's memorandum decision also noted Plaintiff's history of leave abuse, misconduct, and failure to adhere to supervisory instructions. P.Ex. B:10.

12. On April 2, 2004, the Library denied Plaintiff's nine month leave request. PMF ¶ 16; P.Ex. B:10.

13. On April 29, 2004, Gail L. Thompson, Senior Therapist at Gospel Rescue Ministries, informed the Library that Plaintiff entered a one year drug treatment program at Gospel Rescue Ministries on March 8, 2004 to address the health and social consequences of his twenty years of drug dependence. PMF ¶ 17; P.Ex. B:19.

14. The Library issued a proposal to remove Roseboro from his position on July 6, 2004. PMF ¶ 18.

15. The Library terminated Roseboro on September 24, 2004 after failing to attend work for the previous eight months. PMF ¶ 18; Roseboro Decl. ¶ 17.

16. Roseboro remained in the drug treatment facility until approximately November 2004,

nine months after he first left work.  PMF ¶ 18; Roseboro Decl. ¶ 17.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
202-305-1334

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELTON ROSEBORO )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JAMES H. BILLINGTON, )<br>LIBRARIAN OF CONGRESS, )<br>)<br>Defendant. )<br>) | Civil Action No. 06-0602 (TFH) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction.**

The Library had legitimate reasons to terminate the Plaintiff after he left his employment and had been gone for approximately seven months. In the instant case Plaintiff enrolled in a substance abuse program that lasted for twelve months. Plaintiff's Statement of Material Facts to Which There is No Genuine Dispute ("PMF") ¶¶ 8, 9, 11, 17; Plaintiff's Exhibits ("P.Ex.") B:2, 3, 5, 19. He left the employment of the Library of Congress in February of 2004 and never returned. See PMF ¶¶ 3, 5, 14; Declaration of Shelton Roseboro ("Roseboro Decl.")[2] ¶4; P.Ex. B:1 and 10. He was given a notice that the Library proposed to remove him if he did not return to work and a period of time to respond to that notice. Defendant's Exhibit 1. Plaintiff chose to abandon his job and never responded. As a result, seven months after Plaintiff left his job, the Library terminated his employment in September 2004 for taking unauthorized leave. P.Ex. B:22. Hence, Plaintiff cannot show that Defendant interfered with, or retaliated against him in any way by terminating him in

---

[2] Plaintiff cites to the Declaration of Shelton Roseboro as "Exhibit A."

September 2004 for not returning to work. See 29 U.S.C. § 2612(a)(1); see also 29 C.F.R. § 825.216(d) (2007); see also DeMar v. PA Consulting Group, Inc., No. 04-00826, 2006 WL 1827373, at *2 (D.D.C. June 30, 2006); see also Sampson v. Citibank, F.S.B., 53 F. Supp. 2d 13, 18 (D.D.C. 1999); see also Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89-91 (2002). This Court should therefore deny Plaintiff's motion for summary judgment and grant summary judgment to the Defendant.

## ARGUMENT

**A. Standards of Review – Summary Judgment and the FMLA**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In Anderson v. Liberty Lobby Inc., the United States Supreme Court defined a genuine issue of material fact as one where enough evidence exists that a reasonable jury could find for the non-moving party. 477 U.S. 242, 248 (1987). Such a genuine issue of material fact is therefore one that could change the outcome of the litigation. See id. at 247. Issues not outcome-determinative according to a reasonable jury are immaterial. Id. When entertaining a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

Congress enacted the FMLA in 1993, to allow employees to take periods of leave from their jobs for various health and family related reasons. Under the FMLA, an eligible employee entitled

to a total of twelve workweeks of leave during any twelve month period due to, *inter alia*, the employee's own serious health condition which renders the employee unable to perform the functions of his or her position. 29 U.S.C. § 2612(a)(1)(A)-(D). In enacting the FMLA, Congress found that there was "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." Id. § 2601(a)(4). To address this need, the FMLA entitles employees to 12 weeks of unpaid medical leave each year to address either their own serious health conditions or the health conditions of immediate family members. Id. § 2612(a)(1).

The FMLA protects eligible employees by making it unlawful for employers to "interfere, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights for which an employee is entitled. Id. § 2615(a)(1). It is also unlawful for employers to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. Id. § 2615(a)(2).

In addition to its employee protection provisions, the FMLA also protects the interests of employers. The FMLA places several eligibility and notice requirements on employees to ensure that "employees [ ] take reasonable leave for medical reasons … in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(1)-(3). First, to be eligible for 12 weeks of FMLA leave, an employee must have worked for at least 1250 hours in the year preceding his or her request for leave at an employer of more than 50 employees. Id. § 2611(2).[3] Also, employees are required to provide notice of their intention to take leave at least 30 days before taking it or as soon as is "practicable" if unable to provide timely notice due to a serious health condition. Id. § 2611(e)(1)-(2). Employers may further require that employees submit documentation from an

---

[3] The Library of Congress is an employer subject to the FMLA. 29 U.S.C. § 2611(4)(A)(iv).

employee's "health care provider" certifying the beginning date, probable duration, statement of the necessity of leave and inability to work, and any other appropriate medical facts regarding the employee's "serious health condition." Id. § 2613(a)-(b). For purposes of this motion for summary judgment; however, the only issue is that Plaintiff left the workplace and never returned. As a result, he was terminated in September 2004 for taking approximately seven months of unauthorized leave. See P.Ex. B:22.

There are two distinct claims under the FMLA. "[I]nterference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and . . . retaliation claims, in which an employee asserts that his employer discriminated against him because he was engaged in activity protected by the Act." Gaghan v. Guest Servs., Inc., No. Civ.A. 0301096, 2005 WL 3211591, at *3 (D.D.C. Oct. 26, 2005) (quoting Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001)); see also 29 U.S.C. § 2615(a)(1), (2). Plaintiff may not survive summary judgment on either theory.

**B. Plaintiff Has Failed to Establish A Claim For Retaliation Under The FMLA.**

To establish a retaliation claim, Plaintiff must show: (1) that he was engaged in protected activity; (2) the Defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007) (internal citations omitted). The Campbell Court characterized the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or retaliatory motive on the part of the employer. Id. The Plaintiff cannot show either bad intent or retaliatory motive on the part of the Library. The Library did not terminate the Plaintiff until September of 2004. P.Ex. B:22. This was

so, in spite of the fact that Plaintiff left his employment on February 4, 2004, and checked himself into Gospel Rescue ministries to undergo a twelve month rehabilitation program. See PMF ¶ 5; Roseboro Decl. ¶ 4; P. Ex. B:1 and 10.

Moreover, Plaintiff cannot establish a causal connection between his protected activity (*i.e.*, his taking leave) and his termination. The FMLA provides for only 12 weeks of leave. See *infra*. But Plaintiff was not terminated after being absent for 12 weeks. He was terminated for being absent seven months. If Plaintiff had returned to work after 12 weeks, the FMLA would have arguably protected him. But it was Plaintiff's absence in the weeks and months after this 12 week period, a period not protected by the FMLA, that resulted in Plaintiff's termination. Thus, it was not protected activity that caused Plaintiff's termination, it was unprotected activity that did.

Having articulated a legitimate non-discriminatory reason for the termination, the burden reverts to Plaintiff to show that the employer's stated reasons were pretext for retaliating against him. Gaghan, 2005 WL 3211591, at *3. Plaintiff has failed to show any pretext given his failure to return to work.

### C. Even If Plaintiff Were To Establish A *Prima Facie* Case Of Interference Under The FMLA, There is No Prejudice Because Plaintiff Was Not Entitled To More Than Twelve Weeks Of Leave.

Employees are entitled to no more than twelve weeks of unpaid medical leave each year under the FMLA. 29 U.S.C. § 2612(a)(1). This twelve week limit is rigid. According to the Code of Federal Regulations § 825.216(d), if "after 12 weeks of FMLA leave the employee is unable to return to work, the employee no longer has the protections of FMLA …." As the United States District Court for the District of Columbia held in DeMar v. PA Consulting Group, Inc., employees unable to return to work after their twelve weeks expire forfeit their FMLA

protections and must "look elsewhere for relief." DeMar, 2006 WL 1827373, at *2 (citing 29 C.F.R. § 825.216(d)). The DeMar Court reasoned that an employee who was granted FMLA leave but took several months of leave after receiving an oral promise that her job would be held, still forfeited her right to relief because the FMLA does not guarantee job security for endless leave but only for twelve weeks regardless of an employer's promises. Id. at *6.

Similarly, the United States District Court for the District of Columbia held in Sampson v. Citibank, F.S.B. that an employee's FMLA claim "fails as a matter of law" when he or she does not return to work after twelve weeks. 53 F. Supp 2d 13, 18 (D.D.C. 1999). The Sampson Court reasoned that the FMLA excused an employer for terminating its employee more than two months after the employee's twelve week leave period expired without the employee returning to work and without the employee ever properly requesting FMLA leave. Id.

The twelve week limitation is so central to the FMLA that in 2002, the United States Supreme Court even invalidated a regulation that undermined the limit in certain circumstances. See Ragsdale, 535 U.S. 81, 89-91 (2002). In Ragsdale v. Wolverine World Wide, Inc, the Supreme Court struck a regulation requiring employers to either formally designate an employee's leave as FMLA leave, or grant the leave freely as extra leave not credited towards an employer's total FMLA obligation to the employee. Id. at 88. The Ragsdale Court reasoned that this regulation rendered ineffective the twelve week leave limit, the "central provision of the FMLA," because it granted an employee more than twelve weeks of leave after her employer mistakenly failed to designate time during 30 weeks of leave she had already taken as FMLA leave. Id. at 87-88. The Ragsdale Court found that such a regulation was at odds with the

6

purposes of the FMLA because it subverted the "careful balance" of the FMLA between employee and employer interests. Id. at 94.

The Ragsdale Court further reasoned that the regulation was invalid because it relieved "employees of the burden of proving any real impairment of their rights and resulting prejudice" under the FMLA. Id. at 90. As Ragsdale holds, the FMLA provides "no relief unless the employee *has been prejudiced by the violation*." Id. at 89 (emphasis added). This need to show prejudice is not merely technical, but is ultimately decisive to any plaintiff's FMLA claims. See e.g. Coleman v. Potomac Elec. Power Co., 281 F. Supp. 2d 250, 254 (D.D.C. 2003) (holding "[r]ecovery under the FMLA is unambiguously limited to actual monetary losses" and neither punitive, nominal, nor emotional damages are recoverable) (internal citations omitted). In Ragsdale, the Court invalidated the regulation at issue because it allowed employees to take more than twelve weeks of leave "unconnected to any prejudice the employee might have suffered …." Ragsdale, 535 U.S. at 88.

In the instant matter, Plaintiff was not prejudiced by the Library's denial of FMLA leave. Plaintiff forfeited his FMLA rights when he failed to return to work after twelve weeks. Plaintiff's FMLA leave period began on February 3, 2004, when Plaintiff admits he left work at the Library and checked himself into Gospel Rescue Ministries. PMF ¶ 5; Roseboro Decl. ¶ 4; P.Ex. B:1 and 10. In that case, Plaintiff would have consumed his twelve weeks of entitled FMLA leave on or around April 28, 2004 at the latest. However, Plaintiff never returned to work before his termination in September 2004, which was five months later. PMF ¶ 18; Roseboro Decl. ¶ 17. The FMLA did not give the Plaintiff the right to take unlimited leave. The facts of this case very vividly point to the failure of the Plaintiff to EVER return to work.

Rather, the facts show that Plaintiff effectively abandoned his position. Accordingly, it is not the denial of the FMLA leave that caused Plaintiff prejudice, but rather his refusal and most probably incapacity to return to work.

Ultimately, even postulating that Defendant mistakenly denied Plaintiff FMLA leave, no reasonable jury could find that Defendant's denial was anything worse than a mistake with no consequence.[4] The FMLA does not grant relief for such mistakes. See Id. at 88-90; see also Coleman, 281 F. Supp. 2d at 254.

Plaintiff submitted several leave requests and other notices to the Library indicating that he would remain under treatment from nine to thirteen months after he first left work on February 3, 2004. PMF ¶ 5; Roseboro Decl. ¶ 4; P.Ex. B:1 and 10. The Library was first notified on February 11, 2004 that Mr. Roseboro was a resident at the "Transforming Lives Ministry" program of Gospel rescue ministries and would continue to reside at the ministry for twelve months. PMF ¶ 8; P.Ex. B:2. Plaintiff's doctor later notified the Library on February 17, 2004 that Plaintiff was "planning on entering a one-year program to regain control of his life" because it was "important that he focus on his drug addiction to be able to return to work in one year drug-free." PMF ¶ 9; P.Ex. B:3.[5] On March 15, 2004, Gospel Rescue Ministries again notified the Library that Plaintiff was a twelve month resident at the "Transforming Lives Ministry." PMF ¶ 11; P.Ex. B:5. On March 22, 2004,

---

[4] Accordingly, even if the Library had granted Plaintiff twelve weeks of leave under the FMLA, he would still have been lawfully terminated for not returning thereafter. Because Plaintiff entered a twelve month program, it is clear that he had no intention of returning after twelve weeks. It is also clear that the Library would have taken the same action absent the denial of the requested leave. Cf. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

[5] It is commendable that Plaintiff sought to regain control of his life. However, in striking the FMLA's delicate balance between the rights of the employee and those of the employer, Congress did not require that the library shoulder the burden of an employee's year-long absence.

Plaintiff himself submitted a Request for Sick Leave to the Library for nine total months of FMLA leave beginning retroactively on February 3, 2004 and ending on November 8, 2004. PMF ¶ 13; P.Ex. B:10.  Finally, on April, 29, 2004, Gospel Rescue Ministries' senior therapist informed the Library that on March 8, 2004 Plaintiff entered a one year drug treatment program at the ministry. PMF ¶ 17; P.Ex. B:19.  It is clear from this flurry of activity, not only that Plaintiff had failed to give the Library sufficient notice of his desire to take FMLA leave but also that he was requesting far in excess of his allowed twelve weeks.  He had essentially enrolled himself in a program that was to last for one year.  See PMF ¶ 5, 8-11, 17; Roseboro Decl. ¶ 4; P.Ex. B:2-5, 19.  Plaintiff readily admits that he actually spent nine months at Gospel Rescue Ministries after leaving work in February 2004.  PMF ¶ 18; Roseboro Decl. ¶ 17.  Therefore, there is no doubting that Plaintiff intended to take more than twelve weeks of leave and such a request was in itself defective.

In spite of Plaintiff's request, he was never entitled to more than twelve weeks of leave and lost any FMLA protections when he failed to return to work.  Accordingly, Defendant is entitled to judgment as a matter of law.

**D. Plaintiff's Motion For Summary Judgment Must be Denied.**

Plaintiff unsuccessfully seeks to excuse his inability to show prejudice in two ways. First, he argues that he had no notice that employees are only entitled to 12 weeks of FMLA leave and so cannot be held responsible for taking excessive leave.  He states:

> The Library is likely to argue that it did not violate the FMLA because Mr. Roseboro requested more than twelve weeks of leave and all it was required to offer Mr. Roseboro was twelve weeks of leave.  This argument fails because regardless of the amount of leave requested, the Library had an obligation to notify Mr. Roseboro of the amount of FMLA leave he was entitled to receive and grant Mr. Roseboro up to twelve weeks of leave under the FMLA and inform him that it was not obligated to offer leave beyond twelve weeks.  The Library failed

to do so.

PSJ at 10.

Plaintiff's argument is contradicted by the record. His own exhibits show that the Library met its obligation to notify Plaintiff of his FMLA rights. For example, the "FMLA Leave Request Approval/Disapproval Form" that Plaintiff filled out and submitted in February 2004, clearly states: "Except as explained below, you have a right under the Family and Medical Leave Act (FMLA) for up to 12 weeks of unpaid leave … in a 12 month period…." P.Ex. B:11; PSJ at 10. It also repeatedly refers FMLA leave applicants to Library of Congress Regulations LCR 2015-21, which Plaintiff attaches as Plaintiff's Exhibit C. Section 3 H of LCR 2015-21 describes that "Family and Medical Leave means an employee's entitlement to 12 administrative work weeks of unpaid leave." P.Ex. C:2. Section 5 of LCR 2015-21 – "FMLA Entitlements" – also describes that "[a]n eligible employee shall be entitled to a total of 12 administrative work weeks of unpaid leave (leave without pay) during any 12-month period." P.Ex. C:4. Plaintiff cannot claim that he lacked notice that he was only entitled to 12 weeks of leave under the FMLA when from an examination of his own exhibits it is clear that he was put on notice of his rights and obligations.

Second, Plaintiff argues that the Library denied him FMLA leave wrongfully and is simply liable for its interference regardless of the amount of time Plaintiff requested and then took. He states:

> The Library may claim that because Mr. Roseboro took leave which exceeded twelve weeks, it could have terminated Mr. Roseboro after twelve weeks of leave. This argument fails because the notice of removal specifically cited the taking of leave afgter [sic] denial of FMLA leave, as a basis for his termination. Moreover,

10

> this argument goes to damages, and possibility [sic] liability on the retaliation
> claim only, but not liability or damages on the interference claim.

PSJ at 10.  Plaintiff again provides no law to support his proposition that he is due judgment as a matter of law on his interference claim even though he was not entitled to more than 12 weeks of requested leave and cannot show prejudice.  <u>See id.</u>  It is unnecessary to respond to this argument by repeating the reasons that Plaintiff was not entitled to more than 12 weeks of FMLA leave and therefore could not have invoked rights upon which the Library could have interfered or retaliated.  Plaintiff not only fails to support this second argument with law, but it is also wrong as discussed above, and contrary to the spirit of the FMLA.

To argue, as Plaintiff does, that "even if the court finds that the Library could have terminated Mr. Roseboro after twelve weeks, the Library is still liable for an FMLA violation because it interfered with his right to take FMLA leave" (<u>Id.</u> at 11) overlooks the FMLA's purpose to protect both the health needs of employees and business needs of employers.  <u>See</u> 29 U.S.C. § 2601(b)(1)-(3).  Defendant's actions hardly suggest interference with Plaintiff's unearned FMLA rights when between February 2004 and September 2004 Plaintiff effectively enjoyed not just twelve weeks of unpaid medical leave, but nearly seven months of leave, before being terminated.  <u>See</u> PMF ¶¶ 3, 14.  Rather, it is Plaintiff who seeks to interfere with the FMLA's balance by demanding that even though he could not have returned to work 12 weeks after leaving as the FMLA requires, the Library is nonetheless liable to him for prejudice he did not suffer and could never have suffered.  <u>See generally</u> Complaint; <u>see generally</u> PSJ.  Such liability without actual prejudice is contrary to the FMLA's purpose to ensure job security for workers with "serious health conditions that prevent them from working for <u>temporary</u> periods."

See 29 U.S.C. § 2601(a)(4) (emphasis added). Instead, the underlying premise of Plaintiff's argument would turn the FMLA into a permanent guarantor of job security for employees unable to work for *unlimited* periods.

**CONCLUSION**

On the basis of the foregoing, this Court should deny Plaintiff's motion for summary judgment and grant Defendant summary judgment.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
202-305-1334