UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**SHELTON ROSEBORO**                )
                                    )
    **Plaintiff,**    )
 v.                             )  Civil No. 06-0602 (TFH)
                                    )
**JAMES H. BILLINGTON,**            )
**LIBRARIAN OF CONGRESS**           )
                                    )
    **Defendant.**   )
_____)

## MEMORANDUM OPINION

  Pending before the Court are plaintiff Shelton Roseboro's Motion for Summary Judgment and a Cross-Motion for Summary Judgment by defendant James H. Billington, Librarian of Congress. Roseboro, a former employee of the Library of Congress ("Library"), claims that the Library violated his rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654, by (1) wrongfully declining his request for FMLA leave to undergo treatment for substance abuse; (2) failing to notify him of the twelve-week limit on FMLA leave; and then (3) charging him Absent Without Official Leave ("AWOL"), suspending him, and finally firing him because he nonetheless took the FMLA leave to which he was entitled. The Library counters that, because Roseboro took leave anyway, he cannot show prejudice from the Library's denial of his FMLA request. Further, the Library contends that Roseboro did have notice of the twelve-week limit, and because he took leave for several months longer than the FMLA permits, the Library had a legitimate basis for terminating him. After careful consideration of the parties' motions and the entire record, the Court will grant in part and deny in part Roseboro's Motion for Summary Judgment, and grant in part and deny in part the Library's Cross-Motion for Summary Judgment.

## BACKGROUND

Roseboro worked for the Library from 1989 to September 24, 2004. Pl.'s Statement of Material Facts to Which There Is No Genuine Dispute ("PMF") ¶ 2; Def.'s Statement of Material Facts to Which There Is No Genuine Dispute ("DMF") ¶¶ 1, 15; Decl. of Shelton Roseboro Sept. 8, 2006 ("Roseboro Decl.") ¶ 1. At the time of his termination, Roseboro was a library technician. PMF ¶ 1; Roseboro Decl. ¶ 1.

Roseboro, who has a history of crack cocaine abuse, PMF ¶ 4; Roseboro Decl. ¶ 3; Pl.'s Ex. B at 3, suffered a near drug overdose on February 3, 2004. PMF ¶ 5; DMF ¶ 3; Roseboro Decl. ¶ 4. The following day, he checked himself into a twelve-month rehabilitation program at Gospel Rescue Ministries, a certified drug treatment facility. PMF ¶ 6; DMF ¶ 3; Roseboro Decl ¶ 4. Soon thereafter, Roseboro called a supervisor at the Library and left a message explaining his absence from work due to this drug treatment. PMF ¶ 7; Pl.'s Ex. B at 1. On February 11, Gospel Health Ministries sent the Library a notice of Roseboro's residency at the facility for the next twelve months. PMF ¶ 8; DMF ¶ 4; Pl.'s Ex. B at 2. Roseboro's doctor sent a letter to the Library on February 17 stating that Roseboro was "planning on entering a one-year program to regain control of his life" and that it was "important that [Roseboro] focus on his drug addiction to be able to return to work in one year drug-free." Pl.'s Ex. B at 3; PMF ¶ 9; DMF ¶ 5.

On March 1, the Library proposed suspending Roseboro from duty for ten days without pay for failure to properly request leave and absence without official leave. Pl.'s Ex. B at 17, 20. Two weeks later, Gospel Rescue Ministries sent the Library another notice regarding Roseboro's residency there. PMF ¶ 11; DMF ¶ 7; Pl.'s Ex. B at 5. Additionally, Roseboro's doctor sent the Library a Certification of Health Care Provider form attesting to Roseboro's serious health

condition.  PMF ¶ 12; Roseboro Decl. ¶ 4; Pl.'s Ex. B at 6-9.  On March 22, Roseboro submitted a Request for Sick Leave Advance, in which he invoked the FMLA and requested approximately nine months of leave from February 3, 2004 to November 8, 2004.  PMF ¶ 13; DMF ¶ 8; Pl.'s Ex. B at 10.

On April 2, the Library denied Roseboro's request for FMLA leave.  PMF ¶ 16; DMF ¶ 12;  Roseboro Decl. ¶ 15; Pl.'s Ex. B at 10.  Internal memoranda show that while Maureen Landry, Chief of the Libary's Serial Record Division, was "prepared to allow [Roseboro] the twelve (12) weeks of leave to which he is entitled to under FMLA," Pl.'s Ex. B at 12, the Library's Director of Human Resource Services, Teresa Smith, disapproved FMLA leave because Roseboro had a history of leave abuse and she believed his condition was not covered by FMLA regulations.  Pl.'s Ex. B at 16-17.  Roseboro did not himself respond to the denial of his request for FMLA leave, but Gospel Rescue Ministries notified the Library of Roseboro's condition and treatment program once more on April 29.  PMF ¶ 17; DMF ¶ 13; Pl.'s Ex. B at 19.

On June 2, the Library notified Roseboro that he had been suspended for ten days, effective June 21 to July 2.  Pl.'s Ex. B at 20.  The Library notified Roseboro on July 6 that it proposed to terminate his employment, PMF ¶ 18; DMF ¶ 14, and officially terminated his employment on September 24, 2004.  PMF ¶ 18; DMF ¶ 15; Roseboro Decl. ¶ 17.  Roseboro left Gospel Health Ministries in November 2004, after residing there for approximately nine months.  PMF ¶ 18; DMF ¶ 16; Roseboro Decl. ¶ 17.

Roseboro filed this action on March 31, 2006, seeking reinstatement, damages for lost wages and benefits, damages for financial and emotional harm, and costs and attorney's fees.

3

**DISCUSSION**

**I. Legal Standard**

Summary judgment is appropriate when the record before the court demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The moving party is entitled to judgment as a matter of law only if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When adjudicating a summary judgment motion, a court must draw "all justifiable inferences" in the nonmoving party's favor, *Anderson*, 477 U.S. at 255, and refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**II. Roseboro's Claims under the Family Medical Leave Act of 1993**

The FMLA entitles an eligible employee to twelve weeks of unpaid leave during any twelve-month period if a "serious health condition" prevents the employee from performing his or her job functions.  29 U.S.C. § 2612(a)(1)(D).  FMLA coverage extends to Library of Congress employees.  29 U.S.C. §§ 2611(2), (4)(A)(iv).  An eligible employee is one who (1) has been employed by the employer from whom leave is requested for at least twelve months, and (2) has worked at least 1250 hours in the previous twelve-month period.  29 U.S.C. § 2611(2)(A).  A serious health condition entitling an eligible employee to FMLA leave includes an illness, injury,

impairment, or physical or mental condition that involves either inpatient care, 29 C.F.R. §§ 825.114(a)(1), or continuing treatment under the supervision of a health care provider where the employee is incapacitated for over three consecutive days. 29 C.F.R. § 825.114(a)(2)(i). If these prerequisites are met, substance abuse qualifies as a serious health condition. 29 C.F.R. § 825.114(d).

An employer may be held liable for violating the FMLA under two distinct claims: (1) an interference claim under § 2615(a)(1), in which the employer has restrained, denied, or interfered with the employee's substantive rights under the Act, and (2) a retaliation claim under § 2615(a)(2), in which the employer has taken adverse action against the employee because the employee took leave or otherwise engaged in activity protected by the Act. *Haile-Iyanu v. Cent. Parking Sys. of Va., Inc.*, Civ. No. 06-2171, 2007 WL 1954325, at *6 (D.D.C. July 5, 2007); *Gaghan v. Guest Servs., Inc.*, Civ. No. 03-1096, 2005 WL 3211591, at *3 (D.D.C. Oct. 26, 2005); *Price v. Wash. Hosp. Ctr.*, 321 F. Supp. 2d 38, 46 (D.D.C. 2004).

Under both the interference and retaliation theories, the FMLA affords relief only for actual damages. Prejudice to the employee is a necessary element of these claims because 29 U.S.C. § 2617(a), the statutory cause of action for FMLA violations, provides only for compensatory—and not punitive—damages.[1] *See Ragsdale v. Wolverine World Wide, Inc.*, 535

---

[1] Citing *Liu v. Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003), Roseboro argues that wrongful denial of FMLA leave is in itself sufficient to establish an interference claim, with no additional showing of prejudice required. This argument misreads *Liu*. That case establishes that a wrongful denial constitutes interference—a proposition that this Court accepts—but still recognizes prejudice as a necessary element of the claim. In ruling that an employee's interference claim should have survived an adverse motion for summary judgment, the *Liu* court noted that the employee had established a triable issue of fact not only as to a wrongful denial of leave, but also as to damages in the form of lost employment benefits. *See Liu*, 347 F.3d at 1133 n.6.

U.S. 81, 89 (2002). An FMLA violation prejudices an employee only when the "employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief." *Reed v. Buckeye Fire Equip.*, 241 Fed. App'x 917, 924 (4th Cir. 2007) (citing 29 U.S.C. § 2617(a)(1)(A)(i)(I)-(II), (B)) (internal quotations omitted).

Roseboro argues that the Library is liable to him under both interference and retaliation theories. As explained below, narrow aspects of each claim survive summary judgment. The Court first addresses whether there was interference and retaliation, and then discusses what prejudice resulted.

**A. Interference**

Roseboro claims that the Library interfered with his FMLA rights by wrongfully denying him FMLA leave and by failing to notify him of the twelve-week limit on FMLA leave. Applying the appropriate standard on summary judgment, the Court concludes that the Library did wrongfully deny leave, but did not neglect to advise Roseboro of the twelve-week limit.

**1. Wrongful denial of leave**

The Library was wrong to deny Roseboro twelve weeks of FMLA leave to attend a substance abuse treatment program. At the time he left work on February 3, 2004, Roseboro was an FMLA-eligible employee, as the Library had employed him for over twelve months and he had worked in excess of 1250 hours in the twelve months preceding his departure. *See* 29 U.S.C. § 2611(2)(A); PMF ¶ 3; DMF ¶¶ 1-2; Roseboro Decl. ¶ 2. Additionally, Roseboro's drug problem qualified as a serious health condition that prevented him from performing his job functions, 29 U.S.C. § 2612(a)(1)(D), because the condition incapacitated Roseboro for more than three days

due to his need to check into a treatment facility, and the condition required continuing treatment and supervision by a health care provider at the treatment center. *See* 29 C.F.R. §§ 825.114(a)(1), (a)(2)(i), (d). Roseboro was accordingly entitled to twelve weeks of leave for his substance abuse rehabilitation program. 29 U.S.C. § 2612(a)(1)(D). The Library does not substantively contest this point. Accordingly, the Court finds no genuine dispute that the Library interfered with Roseboro's FMLA rights by wrongfully denying his leave request. *See* 29 C.F.R. § 825.220(b).

### 2. Failure to Notify

The record contradicts Roseboro's contention that when he made his FMLA request, the Library never complied with its duty to inform him that FMLA leave lasts a maximum of twelve weeks.[2] Pl.'s Mot. for Summ. J. at 10. As the Library points out, Roseboro's own exhibit shows that the Library provided him notice. Roseboro identifies an "FMLA Leave Request Approval/Disapproval" form, Pl.'s Ex. B at 11, as a document that he submitted in February 2004 as part of his request for FMLA leave. Pl.'s Mot. for Summ. J. at 10. This Library of Congress form states: "Except as explained below, you have a right under the Family and Medical Leave Act (FMLA) for up to 12 weeks of unpaid leave . . . in a 12-month period . . . ." Pl.'s Ex. B at 11. This statement, on an official Library form that Roseboro acknowledges having filled out, put him on notice of the twelve-week limit. As Roseboro offers no rebuttal on this point, the Court holds that the Library did not interfere with his FMLA rights in this respect.[3]

---

[2] When an employee requests FMLA leave, the employer must within a reasonable time provide the employee with written notice of his FMLA rights, including information regarding the employee's annual leave entitlement. 29 C.F.R. § 825.301(c).

[3] The Court therefore finds irrelevant Roseboro's averment that had he known that FMLA leave is limited to twelve weeks, he would have structured his treatment program to allow him to return to work in a timely fashion. Decl. of Shelton Roseboro Sept. 4,

**B. Retaliation**

Roseboro claims that the Library charged him AWOL, suspended him, and fired him in retaliation for him taking FMLA leave.  Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. at 7-8.  To analyze such retaliation claims, courts apply the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Winder v. Erste*, 511 F. Supp. 2d 160, 184 (D.D.C. 2007); *Gaghan,* 2005 WL 3211591, at *5 (citing *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1367 (D.C. Cir. 2000)).  Under the *McDonnell Douglas* framework, an employee may establish a prima facie case creating a presumption of retaliation by showing "(1) that he exercised rights afforded by the [FMLA], (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the exercise of his rights and the adverse employment action."  *Gaghan*, 2005 WL 3211591, at *5.  An employee can establish a causal connection by showing that "the protected activity and the adverse action were not *wholly unrelated*."  *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (emphasis added) (quotation omitted).  Temporal proximity is often sufficient to establish the causal connection.  *Gaghan*, 2005 WL 3211591, at *5 (citing *Gleklen*, 199 F.3d at 1368).

The employer may overcome the presumption of retaliation by producing evidence of a legitimate, non-discriminatory reason for its action.  *Id.* at *6.  If the employer is successful, the burden shifts back to the employee to produce evidence that the legitimate reason was pretextual, i.e., that it was false and that the real reason for the adverse action was retaliation.  *Id.*; *see also*

---

2007 ¶¶ 2-3. Whether or not Roseboro read and understood the information, the Library satisfied its obligation to give him notice.

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (holding that employee "may meet this burden by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence"); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 320 (5th Cir. 1999) (holding that employee must "produce substantial probative evidence that the proffered reason was not the true reason for the employment decision and that the real reason was the [employee's] participation in the protected activity").  The employee must demonstrate that retaliation was not just "a mere factor among many," but the "determinative factor" or "'real' and 'true' reason" behind the adverse action. *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 10 (1st Cir. 1998).

In this case, Roseboro has established a presumption of retaliation with respect to three adverse employment actions the Library took against him.  All three elements are satisfied: (1) Roseboro exercised his FMLA rights when he took leave; (2) Roseboro suffered an AWOL charge, ten-day suspension, and termination; and (3) the Library's documents explicitly predicated all three adverse actions at least partially on absence that should have been treated as FMLA leave.[4]

Per *McDonnell Douglas*, the burden accordingly shifts to the Library to overcome this presumption by proffering a legitimate basis for these three adverse actions, and then back to Roseboro to show that the proffered reason is pretextual.  Based on the evidence, there is no genuine dispute that the Library has not—and cannot—overcome the presumption with respect to

---

[4]   *See* Def.'s Ex. 1 Attachs. D, I (AWOL charge); Def.'s Ex. 1 Attach. E (suspension); Pl.'s Ex. B at 22 (termination).

the AWOL charge.  Regarding the suspension, the Library has offered a legitimate basis and there is a genuine dispute whether that basis is pretextual.  As to the termination, the Library did proffer a legitimate reason, which Roseboro offers nothing to show is pretextual.

### 1. AWOL Charge

Roseboro's absence from February 3, 2004, through April 27, 2004, should have been excused as his rightful twelve weeks of FMLA leave.  Instead, the Library wrongly denied FMLA leave and charged Roseboro AWOL during that period.[5]  The Library has identified no legitimate basis for doing so.  That action was retaliatory.

### 2. Suspension

The Library has proffered a legitimate basis for suspending Roseboro for ten days from June 21, 2004, through July 2, 2004.  Pl.'s Ex. B at 20.  In its decision to suspend Roseboro, the Library cites not only the illegitimate factor of absence that should have been treated as FMLA leave, but also other genuinely unexcused absence that legitimately supports the suspension.  Specifically, the Library's proposal to suspend Roseboro, dated March 1, 2004, *see* Def.'s Ex. 1 Attach. E, identifies incidents of leave abuse in January 2004, *before* Roseboro's FMLA leave began.  Additionally, the Library's letter to Roseboro communicating its final decision to suspend him, dated June 2, 2004, *see* Pl.'s Ex. B at 20, notes his continued absence up to that date, well *after* his FMLA leave expired.  Roseboro does not contest these facts.  This leave abuse both preceding and following the rightful FMLA leave period would on its own justify the suspension.

---

[5]  *See* Def.'s Ex. 1 at 3. In this letter to Roseboro dated July 6, 2004, proposing to terminate him, the Library stated that "You have been charged AWOL every workday . . . since February 3, 2004, with the exception of the 10-workday suspension that you served from June 21, 2004 through July 2, 2004."

The burden thus shifts back to Roseboro to show that his taking of FMLA leave was the "real reason," *Chaffin*, 179 F.3d at 320, that the Library suspended him, and that his misconduct before and after that FMLA period was a pretextual reason. Here, the Court finds a genuinely disputed issue of fact because the record supports competing inferences. On one hand, the suspension was predicated on Roseboro's absence before, during, and after his rightful FMLA leave period, perhaps suggesting that the FMLA leave was "a mere factor among many." *Provencher*, 145 F.3d at 10. On the other hand, the Library first proposed to suspend Roseboro on March 1, 2008—during his FMLA leave—perhaps suggesting that the FMLA leave was the "determinative factor" that triggered the suspension. *Id.* Because neither party has made a definitive showing, the Court cannot grant summary judgment on this issue.

### 3. Termination

As to the termination, the Library has overcome the presumption of retaliation by providing a legitimate, non-discriminatory reason for Roseboro's termination. Specifically, the Library states that "[Roseboro] was terminated for being absent seven months." Mem. in Supp. of Def.'s Cross-Mot. at 5; *see also* PMF ¶¶ 5-7, 18; DMF ¶ 15 (showing that Roseboro never returned to work after February 3, 2004). The FMLA permits termination when an employee remains absent from work after his qualified leave expires. *See Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005) ("[E]mployees who exhaust the twelve weeks of leave provided under the FMLA stand to lose their entitlement to job restoration . . . ."); *Austin v. Fuel Sys., LLC*, 379 F. Supp. 2d 884, 889 (W.D. Mich. 2004) ("[A]n employee who exceeds the permitted FMLA leave time has no right to be restored to his or her job."); 29 C.F.R. § 825.214(b) (declaring that employee who cannot work because of the continuation of a serious

health condition has no right to job restoration under the FMLA). Even granting that Roseboro was entitled to twelve weeks of FMLA leave starting on February 3, 2004, Roseboro had used up that leave by April 27, 2004. After that date, the FMLA entitled Roseboro to no further absence. When he had yet to return to work as of July 6, 2004, the Library mailed its proposal to terminate him, and finally terminated him on September 24, 2004. PMF ¶ 18; DMF ¶¶ 14-15. Roseboro's failure to return to work was a legitimate basis for firing him.

Consequently, the burden shifts back to Roseboro to create a triable issue of fact as to whether the Library's reason for terminating him was pretextual. Roseboro, however, has submitted no evidence that refutes the Library's proffered reason for terminating him. Instead, he relies solely on the fact that the Library treated the entirety of his absence as unsanctioned even though the FMLA authorized the first twelve weeks of it. Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. at 7. This is not enough. Roseboro must do more than show that his mischaracterized leave merely factored into his termination; the law requires him to establish that the protected activity was the true reason for his termination. *Provencher*, 145 F.3d at 10. He has not done so.

To the contrary, the Court can only conclude that Roseboro's extended absence even after his FMLA leave expired was genuinely the reason that the Library fired him. Tellingly, the Library did not even propose to terminate Roseboro until July 6, 2004, well after his FMLA leave had expired. The Court recognizes that the Library's letter terminating Roseboro does refer to the AWOL charge and suspension that were based at least partially on absence that should have been treated as FMLA leave. *See* Pl.'s Ex. B at 22. Nonetheless, the letter states clearly that the final straw was Roseboro's continued, unexcused absence even after those disciplinary actions:

> You were previously suspended for 10 workdays (June 21, 2004, through July 2, 2004) based on AWOL charges and put on strict notice that *similar misconduct in the*

12

> *future could result in further disciplinary action or removal*. Your AWOL charges have continued to accrue despite clear notice that *further AWOL charges could result in disciplinary action against you*. Therefore the proposed action [termination] is both warranted and appropriate.

*Id.* (emphasis added).[6] The Library fired Roseboro because, notwithstanding any period of leave that should have been excused, he never returned to work at all.

Because Roseboro offers nothing to refute the Library's legitimate, non-discriminatory reason for firing him, the Court finds that the Library's termination of Roseboro cannot support his retaliation claim.

### C. Prejudice to Roseboro

The Library interfered with Roseboro's FMLA rights by wrongfully denying him leave and retaliated against his exercise of FMLA rights by charging him AWOL. The Library's suspension of Roseboro may also have been retaliatory. Having demonstrated interference and retaliation, however, Roseboro still must show that he was prejudiced.

Roseboro's statutory cause of action, 29 U.S.C. § 2617(a), sets out three types of cognizable injury: (1) loss of compensation or benefits, (2) other actual monetary harm, or (3) remediable loss in employment status. Roseboro lacks evidence to support a claim that the wrongful denial of leave, AWOL charge, and suspension caused him to lose compensation or benefits. Further, he does not identify any other actual monetary harm. On both the interference and retaliation claims, the only prejudice supported by the record is the existence on Roseboro's personnel record of AWOL charges that definitely should not be there and a ten-day suspension

---

[6] This continued, unexcused absence, in itself cause enough for the Library to terminate Roseboro, is supplemented by Roseboro's previous record of leave abuse in January 2004, prior to his FMLA-protected leave period. *See* Def.'s Ex. 1 Attach. E.

that perhaps should not be there.

First, while Roseboro was wrongfully denied the twelve weeks of FMLA leave, he took that twelve weeks of leave anyway. Accordingly, he cannot claim to have lost the benefit. Additionally, Roseboro would not be entitled to any back pay for leave that was not properly recognized as FMLA leave, as FMLA leave is unpaid. The error caused Roseboro no loss of compensation.

Second, Roseboro has offered nothing to show that the AWOL charge and suspension caused him a loss of compensation. The AWOL charge is wrongful only for the period that should have been treated as Roseboro's FMLA leave; accordingly, Roseboro would not have received any compensation during that time. Further, although Roseboro's suspension was without pay, he offers no evidence to suggest that he would have showed up at work to earn that pay had he not been suspended. To the contrary, all communications to the Library from Roseboro, and from others on his behalf, suggest that Roseboro needed to be absent from work for at least nine months.[7] Besides the numerous communications indicating Roseboro's intent to remain absent for at least nine months, in fact Roseboro actually resided at Gospel Health Ministries for a full nine months without making any attempt to return to work. There is no basis to find that Roseboro would have been at work from June 21, 2004, through July 2, 2004, had he

---

[7] Roseboro's formal FMLA leave request was for nine months. Pl.'s Ex. B at 10. Gospel Rescue Ministries sent two notices advising that "[Roseboro] will be residing at Gospel Rescue Ministries for the next 12 months." *Id.* at 2, 5. Roseboro's doctor sent a letter stating that "[Roseboro] is planning on entering a one-year program to regain control of his life" and "[i]t is important that he focus on his drug addiction to be able to return to work in one year drug-free." *Id.* at 3. A therapist at Gospel Health Ministries sent a letter recommending a "comprehensive, one-year clinical program" given "Roseboro's two decades of drug dependence." *Id.* at 19.

not been suspended.

Finally, Roseboro does allege that the wrongful denial of leave, AWOL charge, and suspension caused him a loss in employment status that is properly the subject of equitable relief. Specifically, Roseboro states that "[h]is official personnel records now contain information which . . . is false, because the [Library] violated the FMLA." Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. at 6. Roseboro's records should not show him AWOL from February 3, 2004, to April 27, 2004. The Library's reply brief does not address this issue. Accordingly, the Court treats the point as conceded and will order that this wrongful AWOL charge be expunged from Roseboro's personnel records. *Cf. Keeffe v. Library of Cong.*, 777 F.2d 1573, 1577, 1583 (D.C. Cir. 1985) (affirming district court's equitable order directing the Library to expunge from its personnel records all references to unwarranted adverse action against an employee). Similarly, if it is later established that the ten-day suspension was retaliatory, then the suspension should also be expunged from Roseboro's personnel records.

## CONCLUSION

Roseboro has demonstrated that the Library interfered with his FMLA rights by wrongfully denying him FMLA leave and retaliated against his exercise of FMLA rights by charging him AWOL. It remains to be determined whether Roseboro's suspension was retaliatory. On both the interference and retaliation claims, the only prejudice Roseboro has shown is the presence on his personnel record of the erroneous AWOL charges from February 3, 2004, through April 27, 2004. The Court will grant Roseboro the equitable relief of having this unwarranted disciplinary action expunged from his personnel record. Should Roseboro establish that the suspension was retaliatory, his remedy will be limited to having the suspension expunged

from his personnel records.

Accordingly, the Court will grant in part and deny in part Roseboro's Motion for Summary Judgment, and grant in part and deny in part the Library's Cross-Motion for Summary Judgment. A corresponding order accompanies this memorandum opinion.

March 31, 2009

                                                                                     /s/
                                                    THOMAS F. HOGAN
                                          United States District Judge